UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 19-10141-LTS |
| WESLEY MACGREGOR, | ) | |
| | ) | |
| Defendant. | ) | |

# UNITED STATES' OPPOSITION TO DEFENDANT MACGREGOR'S MOTION TO DISMISS COUNTS I-III OF THE INDICTMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................ii

INTRODUCTION..................................................................................................1

FACTS ALLEGED IN THE INDICTMENT ..............................................................1

STANDARD OF REVIEW ....................................................................................4

ARGUMENT ......................................................................................................4

    1.    The Indictment States an Offense Against Mr. MacGregor....................4

        a.    The Indictment Alleges that Mr. MacGregor Acted "Corruptly" ...............4

        b.    The Indictment Alleges that Mr. MacGregor Obstructed or Impeded a "Proceeding"...........................................................................8

        c.    Section 1512(c)(2) Is Not Limited to Evidence-Impairment Crimes .........................................................................................12

    2.    The Prosecution of Mr. MacGregor Does Not Violate the Tenth Amendment ..........................................................................16

    3.    Neither Section 1505 Nor Section 1512(c)(2) Is Unconstitutionally Vague ...................................................................................18

    4.    The Court Should Reject the Additional Argument Raised by Mr. MacGregor's Amici...............................................................19

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Arthur Andersen LLP v. United States,*
   544 U.S. 696 (2005) ............................................................................. 5

*Begay v. United States,*
   553 U.S. 137 (2008) ........................................................................ 13, 14

*City & County of San Francisco v. Sessions,*
   349 F. Supp. 3d 924 (N.D. Cal. 2018),
   *appeal docketed,* No. 18-17308 (9th Cir. Dec. 4, 2018) ....................... 17

*City of Chicago v. Sessions,*
   321 F. Supp. 3d 855 (N.D. Ill. 2018) .................................................... 17

*Loughrin v. United States,*
   573 U.S. 351 (2014) ............................................................................. 13

*Lugo-Diaz v. United States,*
   138 S. Ct. 1303 (2018) ........................................................................... 3

*Lunn v. Commonwealth,*
   78 N.E.3d 1143 (Mass. 2017) ......................................................... 16, 17

*Marinello v. United States,*
   138 S. Ct. 1101 (2018) ......................................................................... 18

*Murphy v. NCAA,*
   138 S. Ct. 1461 (2018) ......................................................................... 16

*Printz v. United States,*
   521 U.S. 898 (1997) ............................................................................. 16

*Republic of Iraq v. Beaty,*
   556 U.S. 848 (2009) ............................................................................. 14

*Rodriguez v. United States,*
   139 S. Ct. 2772 (2019) ......................................................................... 15

*Ryan v. Immigration & Customs Enforcement,*
   382 F. Supp. 3d 142 (D. Mass. 2019),
   *appeal docketed,* No. 19-1838 (1st Cir. Sept. 5, 2019) .................... 17, 20

*Skilling v. United States,*
   561 U.S. 358 (2010) ............................................................................. 18

*United States v. Abrams*,
    427 F.2d 86 (2d Cir. 1970) ........................................................................... 10

*United States v. Aguilar*,
    515 U.S. 593 (1995) ........................................................................... 5, 7, 14, 18

*United States v. Ahrensfield*,
    698 F.3d 1310 (10th Cir. 2012) ................................................................... 15

*United States v. Bedoy*,
    827 F.3d 495 (5th Cir. 2016) ......................................................................... 6

*United States v. Bejasa*,
    904 F.2d 137 (2d Cir. 1990) ......................................................................... 10

*United States v. Binette*,
    828 F. Supp. 2d 402 (D. Mass. 2011) ........................................................... 9

*United States v. Brady*,
    168 F.3d 574 (1st Cir. 1999) ......................................................................... 7

*United States v. Brenson*,
    104 F.3d 1267 (11th Cir. 1997) ............................................................... 14, 19

*United States v. Brissette*,
    919 F.3d 670 (1st Cir. 2019) ......................................................................... 4

*United States v. Callipari*,
    368 F.3d 22 (1st Cir. 2004), *vacated on other grounds*, 543 U.S. 1098 (2005) ..................... 7

*United States v. Carson*,
    560 F.3d 566 (6th Cir. 2009) ......................................................................... 6

*United States v. Friske*,
    640 F.3d 1288 (11th Cir. 2011) ..................................................................... 6

*United States v. Fruchtman*,
    421 F.2d 1019 (6th Cir. 1970) ....................................................................... 8

*United States v. Gonzalez*,
    540 F. App'x 967 (11th Cir. 2014) ............................................................... 19

*United States v. Harriss*,
    347 U.S. 612 (1954) ..................................................................................... 18

*United States v. Howard*,
    569 F.2d 1331 (5th Cir. 1978) ................................................................. 14, 19

*United States v. Kanchanalak,*
  37 F. Supp. 2d 1 (D.D.C. 1999) ....................................................... 19

*United States v. Kantengwa,*
  781 F.3d 545 (1st Cir. 2015) ........................................................... 10

*United States v. Kumar,*
  617 F.3d 612 (2d Cir. 2010) ............................................................ 14

*United States v. Leo,*
  941 F.2d 181 (3d Cir. 1991) ............................................................ 10

*United States v. Lewis,*
  657 F.2d 44 (4th Cir. 1981) ............................................................. 10

*United States v. Marquardo,*
  149 F.3d 36 (1st Cir. 1998) ............................................................. 18

*United States v. Martinez,*
  862 F.3d 223 (2d Cir. 2017),
  *vacated on other grounds sub nom. Rodriguez v. United States,* 139 S. Ct. 2772 (2019) ... 15

*United States v. Morosco,*
  822 F.3d 1 (1st Cir. 2016) ............................................................... 18

*United States v. Naeem,*
  389 F. App'x 245 (4th Cir. 2010) ..................................................... 10

*United States v. Noriega,*
  117 F.3d 1206 (11th Cir. 1997) ....................................................... 19

*United States v. Pac. Gas & Elec. Co.,*
  153 F. Supp. 3d 1076 (N.D. Cal. 2015) .......................................... 19

*United States v. Payner,*
  447 U.S. 727 (1980) ....................................................................... 19

*United States v. Perez,*
  575 F.3d 164 (2d Cir. 2009) ............................................................. 9

*United States v. Petruk,*
  781 F.3d 438 (8th Cir. 2015) ............................................................. 6

*United States v. Phillips,*
  583 F.3d 1261 (10th Cir. 2009) .................................................... 6, 15

iv

*United States v. Poindexter*,
   951 F.2d 369 (D.C. Cir.1991) ...................................................................7

*United States v. Price*,
   951 F.2d 1028 (9th Cir. 1991) ...............................................................10

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ....................................................................7

*United States v. Ramos*,
   537 F.3d 439 (5th Cir. 2008) ..............................................................9, 11

*United States v. Reich*,
   479 F.3d 179 (2d Cir. 2007) ....................................................................6

*United States v. Ring*,
   628 F. Supp. 2d 195 (D.D.C. 2009) .......................................................15

*United States v. Rodriguez-Rivera*,
   918 F.3d 32 (1st Cir. 2019) .....................................................................4

*United States v. Schwartz*,
   924 F.2d 410 (2d Cir. 1991) ....................................................................9

*United States v. Smith*,
   831 F.3d 1207 (9th Cir. 2016)................................................................17

*United States v. Stewart*,
   744 F.3d 17 (1st Cir. 2014) .....................................................................4

*United States v. Sutherland*,
   921 F.3d 421 (4th Cir. 2019),
   *petition for cert. filed,* No. 19-433 (Oct. 2, 2019) ................................6

*United States v. Tzeuton*,
   370 F. App'x 415 (4th Cir. 2010)...........................................................10

*United States v. Volpendesto*,
   746 F.3d 273 (7th Cir. 2014) .................................................................15

*United States v. Walker-Couvertier*,
   860 F.3d 1 (1st Cir. 2017),
   *cert. denied sub nom. Lugo-Diaz v. United States,* 138 S. Ct. 1303 (2018)...........................3

*Yates v. United States*,
   135 S. Ct. 1074 (2015) .....................................................................13, 14

## Statutes, Rules and Regulations

8 U.S.C. § 1226(a) ................................................................................ 8

8 U.S.C. § 1229a .................................................................................. 10

8 U.S.C. § 1229a(b) .............................................................................. 11

8 U.S.C. § 1231(a)(5) ...................................................................... 11, 12

18 U.S.C. § 924(e)(2)(B)(ii) ................................................................. 14

18 U.S.C. § 1503 ........................................................................... *passim*

18 U.S.C. § 1505 ........................................................................... *passim*

18 U.S.C. § 1512 .................................................................................. 13

18 U.S.C. § 1512(a)(2)(B)(ii) ............................................................... 13

18 U.S.C. § 1512(b)(2)(B) .................................................................... 13

18 U.S.C. § 1512(c) .............................................................................. 12

18 U.S.C. § 1512(c)(1) .................................................................... 13, 14

18 U.S.C. § 1512(c)(2) ................................................................... *passim*

18 U.S.C. § 1515(a)(1)(C) ................................................................. 8, 9

18 U.S.C. § 1515(b) ............................................................................... 7

18 U.S.C. § 1519 ........................................................................... 13, 14

Fed. R. Crim. P. 12(b)(3)(B)(v) ............................................................. 4

Pub. L. No. 107-204, Tit. XI, § 1102, 116 Stat. 745 ...................... 15, 16

8 C.F.R. § 1208.31(c) .......................................................................... 11

8 C.F.R. § 1208.31(e)-(g), (g)(2)(ii) .................................................... 12

8 C.F.R. § 1241.8(a) ............................................................................ 11

8 C.F.R. § 1241.8(a)(1)-(3) .................................................................. 11

8 C.F.R. § 1241.8(b) ............................................................................ 11

8 C.F.R. § 1241.8(e) ............................................................... 11

142 Cong. Rec. § 11605-02 ....................................................... 7

142 Cong. Rec. § 11607-608 ....................................................... 7

**INTRODUCTION**

The United States respectfully requests that the Court deny defendant Wesley MacGregor's motion to dismiss Counts I-III of the indictment because his challenges are without merit. (He has not moved to dismiss Count IV, alleging perjury.) As explained below, the indictment more than adequately alleges that Mr. MacGregor acted "corruptly" to impede a "proceeding" as those terms are used in 18 U.S.C. §§ 1505 and 1512(c)(2); Section 1512(c)(2) is not limited to evidence-impeachment crimes; and neither Section 1505 nor Section 1512(c)(2) violates the Tenth Amendment or is unconstitutionally vague.

**FACTS ALLEGED IN THE INDICTMENT**

On Friday, March 30, 2018, Newton Police arrested an undocumented immigrant ("A.S.") and charged him with one count of being a fugitive from justice from Pennsylvania (the "fugitive charge") and two counts of narcotics possession (the "drug charges"). Ind. ¶ 6. A.S. was scheduled to be arraigned in Newton District Court the next business day, Monday, April 2, 2018. *Id.*

Fingerprints taken by Newton Police on March 30 and submitted to a national law enforcement database showed that A.S. had twice been deported and was subject to an immigration order prohibiting him from reentering the United States until 2027. *Id.* ¶ 7. An Immigration Officer with Immigration and Customs Enforcement ("ICE"), which is part of the U.S. Department of Homeland Security ("DHS"), issued a federal immigration detainer (the "detainer") and a warrant of removal (the "warrant") for A.S. and sent them to the Newton Police. *Id.* ¶ 8. The detainer asked Newton Police to notify ICE before any release of A.S., relay the detainer to any other law enforcement agency to which Newton Police transferred A.S., and maintain custody of A.S. for up to 48 hours so that ICE could take custody of him. *Id.* The detainer also stated that ICE had biometric information (*i.e.*, fingerprints) confirming his identity. The warrant stated that A.S. was subject to

removal from the United States based on a final order by a designated official, and that any Immigration Officer was commanded to take custody of him for removal from the United States. *Id.*

On April 2, Newton Police transferred custody of A.S. to the Newton District Court and forwarded the detainer and the warrant to the Clerk's Office, Probation, the Assistant District Attorney ("ADA"), and a defense attorney retained by A.S. (the "Defense Attorney"). *Id.* ¶ 9.

Mr. MacGregor was on duty at Newton District Court that day. *Id.* ¶ 14. He had been a Massachusetts Trial Court Officer since 1993 and had been assigned to Newton District Court for about two years. *Id.* ¶ 4. He was authorized to take custody of defendants within the courthouse, and had security card access to the entry and exit doors to the lower level lockup facility, including the rear sally port exit. *Id.*

An ICE Officer dressed in plainclothes arrived at Newton District Court in the morning to execute the warrant and take custody of A.S. upon his release from court. *Id.* ¶ 10. The ICE Officer notified the court officers, including Mr. MacGregor, as well as the clerk of court (the "Clerk"), the ADA, and the Defense Attorney of his identity and the reason he was there. *Id.* The ICE Officer sat in the public audience area of the courtroom. *Id.* ¶ 15.

The judge sitting that day at Newton District Court was Mr. MacGregor's codefendant, Shelly Richmond Joseph. Judge Joseph called A.S.'s case at about noon. *Id.* ¶ 17. The ADA said she would make a bail request for (*i.e.*, seek to detain) A.S. only on the fugitive charge, not the drug charges. *Id.* The case was set for a further call in the afternoon. *Id.*

Judge Joseph directed the Clerk to tell the ICE Officer to leave the courtroom. *Id.* ¶ 19. The Clerk did so. He also told the ICE Officer that, if A.S. were to be released by the court, he would be released out of the courtroom into the courthouse lobby. *Id.* This was consistent with the normal custom and practice at Newton District Court, which was for a court officer to release defendants

from the glass dock in the courtroom out into the courtroom, which had only one public entry/exit: the door to the front lobby. *Id.* ¶ 11. The ICE Officer complied with Judge Joseph's directive and waited in the lobby for A.S. *Id.* ¶ 19.

Mr. MacGregor knew the ICE Officer was in the front lobby with a warrant and detainer for A.S. *Id.* ¶¶ 10, 36. He conferred with the Defense Attorney and agreed to use his security access card to release A.S. out the rear sally port exit of the courthouse so that A.S. could evade arrest by the ICE Officer. *Id.* ¶ 26.

A.S.'s case was recalled in the afternoon *Id.* ¶ 20. At sidebar, Judge Joseph and the Defense Attorney agreed to create a pretext that would allow A.S., after being released from court custody by Judge Joseph, to go downstairs to the lockup so that he could be let out the rear sally port exit in order to evade arrest by the ICE Officer waiting in the front lobby. *Id.* ¶ 27.[1] After the sidebar ended, the ADA dismissed the fugitive charge and said again that she was not requesting detention on the drug charges. *Id.* ¶ 20. Thus, A.S. would be released from court custody. Then the Defense Attorney put the agreed-upon ruse into motion by asking if A.S. could go downstairs instead of being released the normal way through the courtroom and out into the lobby. He said: "I would ask that he, uh – I believe he has some property downstairs. I'd like to speak with him downstairs with the interpreter if I may." *Id.* ¶ 22. Continuing with the pretext, Judge Joseph replied, "That's fine. Of course." *Id.*

Mr. MacGregor asked the Clerk twice whether A.S. had been released. *Id.* The Clerk said yes. *Id.* After Judge Joseph repeated that she was allowing A.S. to go downstairs, Mr. MacGregor escorted A.S. downstairs to the lockup with the Defense Attorney and the interpreter. *Id.* ¶¶ 22-23. Then, as

---

[1] The indictment alleges a "classic hub-and-spokes conspiracy," with the Defense Attorney serving as the hub. *United States v. Walker-Couvertier*, 860 F.3d 1, 15 (1st Cir. 2017), *cert. denied sub nom. Lugo-Diaz v. U.S.*, 138 S. Ct. 1303 (2018).

previously agreed, he used his security access card to open the rear sally port exit to release A.S. out the back door. *Id.* ¶ 23. As a result, the ICE Officer waiting upstairs in the front lobby was unable to take custody of A.S. at the courthouse. *Id.* ¶ 24.

## STANDARD OF REVIEW

Mr. MacGregor has moved to dismiss Counts I-III of the indictment on the grounds that they fail to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "The indictment's allegations are assumed to be true." *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014). The issue for the Court is "not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Brissette*, 919 F.3d 670, 675 (1st Cir. 2019) (internal quotation marks omitted). Mr. MacGregor's motion must fail if he can "prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. Rodriguez-Rivera*, 918 F.3d 32, 34 (1st Cir. 2019) (citation and internal quotation marks omitted).

## ARGUMENT

None of Mr. MacGregor's arguments in support of dismissal of the indictment has merit.

**1. The Indictment States an Offense Against Mr. MacGregor.**

Contrary to Mr. MacGregor's position, the allegations in the indictment show that he acted "corruptly" to obstruct a "proceeding" as those terms are used in Sections 1505 and 1512(c)(2). Furthermore, Section 1512(c)(2) is not limited to evidence-impairment crimes. *See* MacGregor Brief at 8-15.

**a. The Indictment Alleges that Mr. MacGregor Acted "Corruptly."**

Section 1512(c)(2) makes it a felony to "corruptly . . . obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." Section 1505 makes it a felony to "corruptly . . . influence[],

obstruct[], or impede[] or endeavor[] to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States."

Courts interpreting the term "corruptly" in Section 1512(c)(2) have turned to the Supreme Court's definition in a different obstruction statute, 18 U.S.C. § 1503, whose catchall provision states that anyone who "corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" commits a felony. To show that a person acted corruptly in violation of Section 1503, the Supreme Court has imposed a "nexus" requirement: "the act must have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Put differently, for the defendant to have "the evil intent to obstruct," he must have "knowledge that his actions are likely to affect" a judicial proceeding, *i.e.*, he must know that his actions will have "the natural and probable effect" of interfering with the due administration of justice. *Id.* (citation and internal quotation marks omitted) (reversing conviction of federal judge under Section 1503 for lying to an FBI agent because the evidence did not show that the judge knew the agent might testify before a grand jury).

Ten years after *Aguilar*, the Supreme Court extended the nexus requirement to prosecutions under Section 1512(b), which prohibits, *inter alia*, corruptly persuading another person to withhold documents from an official proceeding. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005). The Court held that although an official proceeding need not be pending, it must be at least foreseeable to the defendant, because a defendant who lacks knowledge that his actions are likely to affect an official proceeding lacks the requisite intent to obstruct. *See id.*

Although the First Circuit has not had occasion to address this issue, every circuit court to consider it has extended the nexus requirement from *Aguilar* and *Arthur Andersen* to prosecutions

- 5 -

under Section 1512(c)(2). They have held that a defendant acts corruptly in violation of Section 1512(c)(2) if his actions have the natural and probable effect of interfering with an existing or foreseeable federal proceeding. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 425 (4th Cir. 2019) (affirming businessman's conviction under Section 1512(c)(2) for obstructing grand jury proceeding by submitting fabricated business loan documents after receiving grand jury subpoena for his companies' financial records), *petition for cert. filed*, No. 19-433 (Oct. 2, 2019); *United States v. Bedoy*, 827 F.3d 495, 507-08 (5th Cir. 2016) (affirming detective's conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by telling witness to move out of town, not give her real name if pulled over for a traffic stop, and not let FBI agents into her apartment); *United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015) (reversing conviction under Section 1512(c)(2) because defendant took actions to interfere with a state, not federal, proceeding); *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011) (reversing conviction under Section 1512(c)(2) because evidence did not show that defendant knew the natural and probable result of his actions – removing items from indicted friend's property at his request – would be the obstruction of friend's forfeiture proceeding); *United States v. Phillips*, 583 F.3d 1261, 1263-64 (10th Cir. 2009) (affirming conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by disclosing undercover officer's identity to target of investigation); *United States v. Reich*, 479 F.3d 179, 186-87 (2d Cir. 2007) (affirming lawyer's conviction under Section 1512(c)(2) for obstructing a federal civil lawsuit in which he was a party by faxing a forged court order to his opponent's counsel, who foreseeably relied on the forgery by withdrawing his client's application to appeals court); *see also United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (assuming arguendo that the nexus requirement applies to prosecutions under Section 1512(c)(2)).

For prosecutions under Section 1505, the term "corruptly" is defined by statute: "acting with an improper purpose, personally or by influencing another." 18 U.S.C. § 1515(b).[2] The Second Circuit has held that *Aguilar*'s nexus requirement also applies to this definition. *See United States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006); *see also United States v. Callipari*, 368 F.3d 22, 42 (1st Cir. 2004) (finding that district court's failure to give nexus jury instruction in Section 1505 case, if error, was harmless), *vacated on other grounds*, 543 U.S. 1098 (2005). Mr. MacGregor does not argue that the term "corruptly" has a different meaning in Section 1505 than in Section 1512(c)(2). *See* MacGregor Brief at 8-10.

The indictment more than adequately alleges that Mr. MacGregor acted corruptly. Knowing that an ICE Officer was in the courthouse lobby with a detainer and warrant of removal for A.S., Mr. MacGregor agreed with the Defense Attorney that he would use his security access card to release A.S. out the rear sally port exit of the courthouse, contrary to the normal custom and practice at Newton District Court. When Judge Joseph released A.S. from court custody, she set in motion her part of the conspiracy, saying that the Defense Attorney had asked to accompany A.S. downstairs to

---

[2] The First Circuit has noted that the enactment of Section 1515(b) served "a very narrow purpose." *United States v. Brady*, 168 F.3d 574, 578 (1st Cir. 1999). "As explained on the floor of Congress, the provision was to make clear that lying or otherwise obstructing Congress was covered by section 1505, and to counter any suggestion of undue vagueness made in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir.1991). *See* 142 Cong. Rec. § 11605–02, § 11607–608 (1996)." *Brady*, 168 F.3d at 578 n.2.

The complete text of Section 1515(b) is: "As used in section 1505, the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." The Commonwealth of Massachusetts states in its amicus brief that Section 1515(b) requires proof that the defendant engaged in one of these specific examples, that is, made a false or misleading statement, or withheld, concealed, altered, or destroyed a document or other information. *See* Doc. No. 71 at 15-16. It offers no support for its interpretation, which is contrary to the plain language of the statute.

"further interview" him and that she was allowing the request. Mr. MacGregor then fulfilled his role in the conspiracy by escorting A.S. downstairs with the Defense Attorney and the interpreter and using his security access card to open the rear sally port exit to release A.S. out the back door. His purpose in doing so was to help A.S. evade arrest by the ICE Officer who he knew was upstairs in the front lobby, waiting for A.S.

### b. The Indictment Alleges that Mr. MacGregor Obstructed or Impeded a "Proceeding."

Mr. MacGregor is charged with obstructing or impeding an "official proceeding," a term that includes "a proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. §§ 1512(c)(2), 1515(a)(1)(C). He also is charged with obstructing or impeding a "pending proceeding . . . before any department or agency of the United States." *Id.* § 1505. Specifically, he is charged with obstructing or impeding A.S.'s federal immigration removal proceeding. Ind. ¶¶ 38, 40, 42. Whether a proceeding qualifies under Section 1512(c)(2) and/or Section 1505 is a question of law to be decided by the Court. *See, e.g., United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970).

The indictment alleges that A.S. had been deported twice, in 2003 and 2007, and somehow again had reentered the country illegally before his arrest on March 30, 2018. Ind. ¶ 7. He was subject to an order prohibiting him from reentering the United States until 2027. *Id.* ¶ 7. His warrant was issued pursuant to a provision of the Immigration and Nationality Act that authorizes the Attorney General, who has delegated his authority to the Secretary of Homeland Security, to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The warrant advised Mr. MacGregor that A.S. was subject to removal from the United States based on a final order by a designated official, and that the ICE Officer was commanded to take custody of A.S. for removal from the United States. Ind. ¶ 8. Thus, Mr.

MacGregor knew that the purpose of the ICE Officer arresting A.S. was to detain him in furtherance of an immigration proceeding concerning his removability, and that he already had been issued at least one order of removal.

Although the First Circuit has never addressed the issue, other circuits have held that the term "proceeding before a Federal Government agency which is authorized by law" under Section 1515(a)(1)(C) implies "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008). A qualifying proceeding includes, for example, a Bureau of Prisons investigation into incidents involving use of force by BOP staff upon prisoners. *See United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). The *Perez* court noted that, under a BOP Program Statement, an After-Action Review Committee consisting of the warden and three other officials must review an official Use of Force Report, which includes a memorandum prepared by each corrections officer involved in the incident. The committee must complete an After-Action Report containing its findings, including whether BOP policy was followed and whether further investigation is warranted. The warden may refer the matter for further investigation to the Department of Justice's Office of Inspector General, the BOP's Office of Internal Affairs, or the FBI. *Id.* at 165-66. The Second Circuit held that this "detailed process of review and decision-making" sufficed under Section 1515(a)(1)(C), and, therefore, was a "proceeding" under Section 1512(c)(2). *Id.* at 169. Proceedings that are less formal may not qualify under Section 1512(c)(2), *see, e.g.*, *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (preliminary investigation in which SEC investigators questioned defendant over the phone), but still qualify under Section 1505, *see, e.g., United States v. Price*, 951 F.2d 1028, 1029-32 (9th Cir. 1991) (IRS agents' attempt to interview defendant was a Section 1505 proceeding); *United States v. Leo*, 941 F.2d 181, 198-99 (3d Cir. 1991)

(same; defense agency audit); *United States v. Schwartz*, 924 F.2d 410, 422-23 (2d Cir. 1991) (same; customs service interview during investigation); *United States v. Lewis*, 657 F.2d 44, 45 (4th Cir. 1981) (same; IRS investigation).

An immigration proceeding concerning an alien's removability qualifies as a "proceeding" under both Sections 1512(c)(2) and 1505. *See, e.g.*, *United States v. Kantengwa*, 781 F.3d 545, 563 (1st Cir. 2015) (affirming alien's conviction under Section 1505 for obstructing removal proceeding and asylum application by lying to immigration officials during interviews and on written submissions, and lying under oath in immigration court); *United States v. Tzeuton*, 370 F. App'x 415, 417 (4th Cir. 2010) (affirming immigration attorney's conviction under Section 1512(c)(2) for obstructing a proceeding to consider and rule on an alien's asylum application); *United States v. Abrams*, 427 F.2d 86, 90 (2d Cir. 1970) (stating that an alien's application for voluntary departure is a proceeding under Section 1505); *see also United States v. Naeem*, 389 F. App'x 245, 246 (4th Cir. 2010) (per curiam) (affirming defendants' convictions under Section 1505 for lying to U.S. Citizenship and Immigration Services in connection with codefendant's application for lawful permanent residency); *United States v. Bejasa*, 904 F.2d 137, 142 (2d Cir. 1990) (affirming immigration attorney's conviction under Section 1505 for giving U.S. Citizenship and Immigration Services false information about client's marital status and coaching client to lie during USCIS interview).

Because A.S. previously had been removed, ICE had two options for determining his removability. One option was to serve him with a notice to appear at a proceeding where an immigration judge would decide whether he was removable. *See* 8 U.S.C. § 1229a. Under this scenario A.S. would be entitled to a hearing with many due process protections, including the right to retain counsel, present evidence, and cross-examine witnesses. *See id.* § 1229a(b). Mr. MacGregor

does not dispute that this qualifies as a "proceeding" under both Sections 1512(c)(2) and 1505. *See* MacGregor Brief at 11.

The other route was for ICE to conduct an administrative proceeding to reinstate A.S.'s prior order of removal. *See* 8 U.S.C. § 1231(a)(5). This also was a "formal convocation of the agency in which parties are directed to appear." *Ramos*, 537 F.3d at 462-63. Before ICE may remove an alien based on a prior order of removal, it must make certain findings. *See* 8 C.F.R. § 1241.8(a). An immigration officer must obtain the person's alien file and locate the prior order of removal; the officer must confirm that the person is, in fact, the alien previously ordered removed; and the officer must confirm that the alien illegally reentered the United States. *Id.* § 1241.8(a)(1)-(3). If the officer determines that the alien is subject to removal, the alien is entitled to written notice of the determination, which the officer must reconsider if the alien contests it. *Id.* § 1241.8(b). If the officer reinstates the prior order of removal and the alien expresses a fear of returning to the country designated in that order, the alien must be referred immediately to an asylum officer for a reasonable-fear interview. *Id.* § 1241.8(e). The purpose of the interview is to afford the alien the opportunity to "establish[] a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." *Id.* § 1208.31(c). The asylum officer must conduct the interview in a non-adversarial manner out of public view; an interpreter must be provided if necessary; the alien may retain counsel and present evidence; the alien's attorney may give a closing statement; the asylum officer must create a summary of the material facts which the alien must be permitted to review for errors; and the asylum officer must prepare a written decision. *Id.* Whether or not the asylum officer determines that the alien's fear is reasonable, the alien is entitled to be heard by an immigration judge who may order that removal be withheld or deferred. *Id.* §

1208.31(e)-(g). That decision, in turn, is reviewable by the Board of Immigration Appeals. *Id.* §

1208.31(g)(2)(ii). In light of these formal requirements, an administrative reinstatement proceeding

pursuant to 8 U.S.C. § 1231(a)(5) also qualifies as a "proceeding" under Sections 1512(c)(2) and

1505.

The only remaining question is whether A.S.'s immigration proceeding was "pending" as of

April 2, 2018, thereby qualifying as a "pending proceeding . . . before any department or agency of

the United States" under Section 1505. The answer is yes. The immigration proceeding concerning

A.S.'s removal began in 2003, the first time he was encountered in the United States and deported. It

was renewed/continued in 2007, when ICE discovered that he had reentered the country illegally and

removed him again. It was renewed/continued again on March 30, 2018, when ICE discovered that

A.S. had reentered the country illegally again. As of April 2, 2018, A.S.'s immigration proceeding

concerning his removal – which could follow either of the two routes described above – was pending.

And of course Mr. MacGregor knew that an immigration proceeding regarding A.S.'s removal was

pending, because the warrant informed him that A.S. was subject to removal from the United States

based on a final order by a designated official, and that the ICE Officer was commanded to take

custody of A.S. for removal from the United States.

For these reasons, the indictment sufficiently alleges that Mr. MacGregor "corruptly"

obstructed or impeded a "proceeding" in violation of both Sections 1512(c)(2) and 1505.

### c.  Section 1512(c)(2) Is Not Limited to Evidence-Impairment Crimes

Section 1512(c) states:

Whoever corruptly –

(1) alters, destroys, mutilates, or conceals a record, document, or other object,
or attempts to do so, with the intent to impair the object's integrity or
availability for use in an official proceeding; or

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

commits a felony. For several reasons the Court should reject Mr. MacGregor's argument that Section 1512(c)(2) is limited to evidence-impairment crimes. *See* MacGregor Brief at 13-14.

First, the text of Section 1512(c)(2) is unqualified. It reaches acts that "obstruct[], influence[], or impede[] any official proceeding," when done "corruptly." The text does not limit the provision to acts that impair evidence for use in an official proceeding. In contrast, Section 1512(c)(1) explicitly includes the requirement that the defendant act "with the intent to impair the object's integrity or availability for use in an official proceeding," a requirement that Congress also included in two other subsections of Section 1512. *See* 18 U.S.C. § 1512(a)(2)(B)(ii), (b)(2)(B). No comparable "intent to impair" language appears in 1512(c)(2). Instead, the intent element comes from the word "corruptly." Congress is presumed to have acted intentionally in the disparate inclusion and exclusion of evidence-impairment language. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("when Congress includes particular language in one section of a statute but omits it in another – let alone in the very next provision – this Court presumes that Congress intended a difference in meaning") (citation and internal quotation marks omitted).[3] Moreover, the fact that subsection (c)(1) and (c)(2) each contains

---

[3] The two cases on which Mr. MacGregor relies are inapposite. *See* MacGregor Brief at 14 (citing *Yates v. United States*, 135 S. Ct. 1074 (2015); *Begay v. United States*, 553 U.S. 137 (2008)). According to Mr. MacGregor, *Yates* and *Begay* hold that "when Congress sets out a list of specific acts that constitute a crime, and then follows that enumeration with a residual clause (like § 1512(c)(2)), the residual clause should be read through the lens of the enumerated examples." MacGregor Brief at 22. But neither case so holds. In neither case did the Court interpret statutory language which itself contains a residual clause. In both cases the Court held that when a general term immediately follows specific terms *within a single statutory enumeration*, the general term is limited to interpretations that are similar to the specific terms. Thus, the term "tangible object" in 18 U.S.C. § 1519, which makes it a felony to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States," is limited to tangible objects that are similar to

its own "attempt" prohibition, and their separation by the word "or," underscores that they are independent prohibitions. Furthermore, the introductory word "otherwise" signals that subsection (c)(2) covers obstructive acts that are different from those listed in subsection (c)(1).

In fact, the breadth of Subsection 1512(c)(2) is reinforced by the similarity of its language to the omnibus clause of 18 U.S.C. § 1503, which covers anyone who "corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." That clause follows two more specific clauses which protect jurors, judges, and court officers. The omnibus clause nevertheless has been construed to be "far more general in scope than the earlier clauses" of Section 1503. *United States v. Aguilar*, 515 U.S. 593, 598 (1995). Courts therefore have treated it as "a catch-all provision which generally prohibits conduct that interferes with the due administration of justice," *United States v. Brenson*, 104 F.3d 1267, 1275 (11th Cir. 1997), and have given it a "non-restrictive reading," *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010). While the specific clauses "forbid certain means of obstructing justice . . . the omnibus clause aims at obstruction of justice itself, regardless of the means used to reach that result." *United States v. Howard*, 569 F.2d 1331, 1334 (5th Cir. 1978); *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("the whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated – known unknowns"). Given the similarity of Section 1512(c)(2) to Section 1503's omnibus clause, Congress would have expected Section 1512(c)(2) to cover acts that produced a

---

records and documents. *Yates*, 135 S. Ct. at 1086 (holding that the term does not include fish). Likewise, the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" in 18 U.S.C. § 924(e)(2)(B)(ii), which defines "violent felony" under the Armed Career Criminal Act in part as a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," is limited to crimes that are similar to burglary, arson, extortion, and offenses involving the use of explosives. *Begay*, 553 U.S. at 142 (holding that the phrase does not include drunk driving). Neither 18 U.S.C. § 1519 nor 18 U.S.C. § 924(e)(2)(B)(ii) contains a residual clause.

similar *result* to the evidence-impairment provisions – *i.e.*, the result of obstructing justice – rather than covering only acts that were similar in *manner*.

Second, courts have not limited Section 1512(c)(2) to conduct that impairs evidence. They instead have read it to cover obstructive acts in any form. *See, e.g., United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); *United States v. Ring*, 628 F. Supp. 2d 195, 224 (D.D.C. 2009) (stating that the meaning of Section 1512(c)(2) "is plain on its face"). And courts have upheld convictions under Section 1512(c)(2) that did not involve evidence impairment but instead resulted from conduct which more broadly thwarted arrests or investigations. *See, e.g., United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (where defendant police officer and others conspired to rob drug dealers, court affirmed Section 1512(c)(2) conviction of defendant for notifying his co-conspirators when arrest warrants were issued, making it possible for them to evade arrest by absconding), *vacated on other grounds sub nom. Rodriguez v. United States*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (affirming conviction of police officer under Section 1512(c)(2) for notifying target about covert investigation); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (affirming conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by disclosing undercover officer's identity to target of investigation).

Finally, while there is no need to resort to legislative history given the straightforward language of Section 1512(c)(2), the legislative history is no reason to impose extratextual limitations on its reach. Congress enacted Section 1512(c)(2) as part of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, Tit. XI, § 1102, 116 Stat. 745. The relevant section of the statute was entitled, "Tampering with a Record *or Otherwise Impeding an Official Proceeding*." *Id*. § 1102 (emphasis added). That title indicates Congress intended the two clauses to have independent effect.

For all of these reasons, Counts I-III of the indictment state an offense against Mr. MacGregor.

**2. The Prosecution of Mr. MacGregor Does Not Violate the Tenth Amendment.**

The parties are in agreement that, under the Tenth Amendment anti-commandeering doctrine, the federal government cannot command state officials to enforce federal laws, including federal immigration policies. *Cf., e.g., Murphy v. NCAA*, 138 S. Ct. 1461, 1485 (2018) (holding that federal government may not command state officials to enforce the federal Professional and Amateur Sports Protection Act); *Printz v. United States*, 521 U.S. 898, 935 (1997) (same; federal Brady Handgun Violence Prevention Act).

But Mr. MacGregor is not charged with failing to enforce federal immigration law. He is not charged with failing to assist the ICE Officer in executing an immigration detainer and warrant. He is charged with affirmatively, corruptly impeding an immigration proceeding by releasing an alien out the back exit of a courthouse, contrary to normal custom and practice, in order to help the alien evade arrest by a federal immigration officer waiting in the front lobby with an immigration detainer and warrant. The distinction between failing to assist and actively impeding ICE was underscored in a policy issued in November 2017 by the Chief Justice of the Massachusetts Trial Court in response to the Massachusetts Supreme Judicial Court's decision in *Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017). Ind. ¶ 12; Doc. No. 60-1 at 2. The policy, which was directed to all court personnel, including Mr. MacGregor, stated that if a DHS official sought to take custody of a person who was no longer in court custody – as was the case with A.S. once Judge Joseph ordered his release – court personnel, while prohibited from "assist[ing] in the physical act of taking that individual into

custody," also were *prohibited from "imped[ing] DHS officials from doing so*." Doc. No. 60-1 at 5 (emphasis added).[4]

None of the cases cited by Mr. MacGregor supports his position. *See Lunn v. Commonwealth*, 78 N.E.3d 1143, 1160 (Mass. 2017) (holding that "Massachusetts law provides no authority for Massachusetts court officers to arrest and hold an individual solely on the basis of a Federal civil immigration detainer, beyond the time that the individual would otherwise be entitled to be released from State custody."); *Ryan v. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142, 146 (D. Mass. 2019) (preliminarily enjoining ICE from "civilly arresting parties, witnesses, and others attending Massachusetts courthouses on official business while they are going to, attending, or leaving the courthouse"[5]), *appeal docketed*, No. 19-1838 (1st Cir. Sept. 5, 2019); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 970 (N.D. Cal. 2018) (enjoining the enforcement of a federal law requiring state and local governments to share immigration status information with ICE in order to receive certain federal funds), *appeal docketed*, No. 18-17308 (9th Cir. Dec. 4, 2018); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 879 (N.D. Ill. 2018) (same). None of these cases authorizes Massachusetts state officials to affirmatively obstruct or impede a federal immigration proceeding. On the contrary, state and local officials may not impede federal law enforcement officers from doing their job. *See, e.g.*, *United States v. Smith*, 831 F.3d 1207, 1215 (9th Cir. 2016) (affirming

---

[4] The amicus brief of Professor Jennifer M. Chacón, et al., erroneously asserts that "ICE . . . ha[d] no expectation to make arrests inside Massachusetts courthouses." Doc. No. 81 at 20. ICE indeed had that expectation, which was consistent with the Trial Court DHS Policy.

[5] Not only was *Ryan* decided well after the events in this case, the scope of the *Ryan* injunction would not have covered the factual situation Mr. MacGregor faced. *See Ryan*, 382 F. Supp. 3d at 146 (stating that the court's injunction "does not limit ICE's . . . civil arrests of individuals who are *brought to Massachusetts courthouses while in state . . . custody*," like A.S.) (emphasis added). The amicus brief of the Massachusetts Association of Criminal Defense Lawyers relies on *Ryan* without acknowledging this limitation on the scope of the *Ryan* preliminary injunction. *See* Doc. No. 84 at 3.

convictions of county sheriff's department employees under 18 U.S.C. § 1503 for obstructing FBI agents who were assisting grand jury's investigation into civil rights abuses at county jails).

For these reasons, the prosecution of Mr. MacGregor does not violate the Tenth Amendment.

### 3. Neither Section 1505 Nor Section 1512(c)(2) Is Unconstitutionally Vague

The Court should reject Mr. MacGregor's argument that Sections 1505 and 1512(c)(2) are unconstitutionally vague as applied to his conduct. *See* MacGregor Brief at 20.

A criminal statute is unconstitutionally vague if it "'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by [the] statute.'" *United States v. Marquardo*, 149 F.3d 36, 41 (1st Cir. 1998) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)). "Of course the requisite fair warning can come from judicial decisions construing the law. And judges have no business junking a statute simply because we could have written it with greater precision." *United States v. Morosco*, 822 F.3d 1, 5 (1st Cir. 2016) (internal quotation marks and citations omitted).

As with other criminal laws, the Supreme Court has "exercised restraint" in interpreting obstruction-of-justice statutes, in part to ensure that individuals have "fair warning" of what a criminal statute prohibits. *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018). The nexus test, described *supra* at 5-7, alleviates fair-warning concerns by requiring that obstructive conduct have a close enough connection to existing or future proceedings to implicate the dangers targeted by Sections 1505 and 1512(c)(2) and to ensure that the defendant actually had the obstructive result in mind.

The nexus requirement also ensures that the statutes define crimes "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010) (citation and internal quotation marks omitted); *see United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in

part and dissenting in part) (rejecting vagueness challenge to the word "corruptly," an issue not addressed in the majority opinion, as used in Section 1503); *accord United States v. Brenson*, 104 F.3d 1267, 1280-81 (11th Cir. 1997); *United States v. Howard*, 569 F.2d 1331, 1336 n.9 (5th Cir. 1978) ("If anyone unwittingly runs afoul of § 1503, it will not be on account of a misconstruction but because of an ignorance for which there is no excuse."); *see also United States v. Gonzalez*, 540 F. App'x 967, 975 (11th Cir. 2014) (rejecting defendant's argument that Section 1505 was unconstitutionally vague as applied).[6]

### 4. The Court Should Reject the Additional Argument Raised by Mr. MacGregor's Amici

The amicus brief by the Massachusetts Association of Criminal Defense Lawyers and the amicus brief by the American Immigration Lawyers Association and Justice at Work argue that the prosecution of Mr. MacGregor impedes immigrants' right to access the courts. *See* Doc. No. 84 at 7-14; Doc. No. 92 at 2-16. That is untrue. Immigrants' right to access the courts remains the same whether or not Mr. MacGregor is prosecuted for affirmatively obstructing the immigration proceeding of an alien brought to district court in state custody. In any event, the Court lacks jurisdiction to dismiss an indictment based on alleged harm to third parties. *See, e.g., United States v. Payner*, 447 U.S. 727, 737 (1980) ("[the defendant] cannot take advantage of the Government's violation of the constitutional rights of Wolstencroft, for he is not a party to this case") (Burger, J., concurring); *United States v. Noriega*, 117 F.3d 1206, 1214 (11th Cir. 1997).

---

[6] In its amicus brief the Commonwealth of Massachusetts cites two decisions in which courts allegedly held the phrase "acting with an improper purpose" in Section 1505 to be unconstitutionally vague as applied. *See* Doc. No. 71 at 14-15. In fact, however, both courts *rejected* the vagueness challenge. *See United States v. Pac. Gas & Elec. Co.*, 153 F. Supp. 3d 1076, 1084 (N.D. Cal. 2015); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999).

The argument raised by these amici is a thinly veiled attempt to justify Mr. MacGregor's crimes as a response to an allegedly unlawful act by the ICE Officer. That contention is based on a misunderstanding of both the law and the facts. The ICE Officer's actions at Newton District Court were perfectly lawful. Although Judge Talwani held in *Ryan* that ICE civil arrests at Massachusetts courthouses likely violate the common law privilege against civil arrests at courthouses,[7] she noted that the privilege applies only to parties, witnesses, and others who come to court voluntarily. The privilege does not extend to individuals who are brought to a courthouse in federal or state custody, like A.S. *Ryan*, 382 F. Supp. 3d at 157 n.5. Therefore, the preliminary injunction ordered in *Ryan* does not extend to ICE civil arrests of individuals like A.S. who are brought to court while in federal or state custody. *Id.* at 146. Moreover, to the extent Mr. MacGregor maintains that he believed ICE's arrest of A.S. would be unlawful – which in any event would not be a basis for a motion to dismiss – his belief was not held in good faith: the DHS Trial Court Policy expressly informed him that ICE officials were permitted to make civil arrests at courthouses.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Mr. MacGregor's motion to dismiss Counts I-III of the indictment.

---

[7] The government, which has appealed Judge Talwani's decision, disputes this ruling. But this Court need not opine on whether it believes *Ryan* was correctly decided. That is because *Ryan* does not extend to the facts in this case since A.S. was brought to court in state custody.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Christine Wichers*
DUSTIN CHAO
CHRISTINE WICHERS
Assistant United States Attorneys

**<u>Certificate of Service</u>**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 18, 2019.

*/s/ Christine Wichers*
CHRISTINE WICHERS