UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHELLEY M. RICHMOND JOSEPH,<br><br>Defendant | )<br>)<br>)<br>)  Criminal No. 19-cr-10141-LTS<br>)<br>)<br>)<br>) |

AGREEMENT

This Agreement (the "Agreement") is made between the United States Attorney's Office for the District of Massachusetts (the "USAO") and the defendant, Shelley M. Richmond Joseph ("Joseph").

Joseph acknowledges that the USAO has independently developed evidence during its investigation and that a Grand Jury sitting in the District of Massachusetts returned an indictment in this case; Joseph does not challenge the validity of the Grand Jury's action.

Term of the Agreement

1.  This Agreement is effective for a period, running from the date on which it is signed until the date the conditions below are satisfied (the "Term").

Cooperation with Massachusetts Commission on Judicial Conduct

2.  Joseph agrees that within thirty days of the effective date of this agreement, she will formally refer herself to the Massachusetts Commission on Judicial Conduct and will thereafter cooperate fully in any investigation or proceeding into her conduct that has been or may be initiated or conducted by the Massachusetts Commission on Judicial Conduct, until any such investigation or proceeding is closed or concluded. Such referral shall include a stipulation by Joseph to the accuracy of the facts set forth in the attached Statement of Facts ("Statement"). The parties agree

1

that the attached agreed-upon statement of facts may not represent all relevant facts. Joseph agrees that she will: (1) not contest the accuracy of the Statement; (2) not object to the consideration, or admissibility into evidence, of the Statement in any investigation or proceeding that has been or may be initiated or conducted by the Massachusetts Commission on Judicial Conduct; and (3) attest in writing, under penalty of perjury, to her compliance with the conditions of this Paragraph at the time of her submission to the Massachusetts Commission on Judicial Conduct. Joseph further agrees that the Indictment, and any other public filings on the docket in this case shall be available to the Massachusetts Commission on Judicial Conduct. Except as expressly provided herein, nothing in this paragraph shall be read to impair Joseph's ability to otherwise defend or contest any proceeding before, or sanction imposed by, the Massachusetts Commission on Judicial Conduct, including any appeals.

Dismissal of Prosecution

3.      If Joseph complies with her obligation under Paragraph 2 of this Agreement to refer herself to the Massachusetts Commission on Judicial Conduct, and provides sworn attestation of her self-referral, the USAO will file an assented-to motion for dismissal of the Indictment no later than thirty days after receiving the attestation; such dismissal shall be without prejudice to the United States ability to re-present the indictment in the event of a material breach of Joseph's obligations under Paragraph 2.

4.      The USAO and Joseph understand that the Court must approve the dismissal of the charges in the Indictment.

Agreement Binding Only on Joseph and USAO

5.      This Agreement is binding only on Joseph and the USAO and does not bind any other component of the U.S. Department of Justice, any federal agency, or any state or local law enforcement or administrative authority, including, but not limited to, the Massachusetts

Commission on Judicial Conduct and the Massachusetts Supreme Judicial Court. Further, the waivers and other agreements made by Joseph herein shall not be binding on Joseph in any civil or criminal proceeding initiated by any person or entity other than the USAO or Joseph.

6. Nothing in this Agreement restricts in any way the ability of the USAO to proceed against any individual or entity not a party to this Agreement.

Miscellaneous

7. Joseph and the USAO agree that this Agreement, including the Statement, shall be made available to the public.

8. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same Agreement. Signatures transmitted by facsimile or email shall be deemed to be original signatures for all purposes.

9. This Agreement, including the Statement, constitutes the entire agreement between the parties, and supersedes any prior agreements or understandings, both oral and written, with respect to the subject matter hereof and the disposition of this case. No promises, representations, or agreements have been made other than those set forth in this Agreement. This Agreement may be modified or supplemented only in a written memorandum signed by the parties or by express agreement of the parties on the record in court.

10. Joseph is aware that 18 U.S.C. § 3006A, the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants' attorneys' fees and other litigation expenses. In executing this agreement, Joseph voluntarily and knowingly waives any claim Joseph might assert under this statute.

Advice of Counsel

11. Joseph acknowledges the following: she has read and understands the terms and provisions of this Agreement; she has had a full and complete opportunity to consult with legal

counsel and to ask any questions about the terms and provisions of this Agreement and her agreements and waivers stated herein are knowing and voluntary and are made with the advice of counsel; and she is satisfied with the legal representation provided by her legal counsel.

AGREED.

ZACHARY A. CUNHA
UNITED STATES ATTORNEY
Acting Under Authority Conferred by 28
U.S.C. § 515

By: *[signature]*
WILLIAM ABELY
Criminal Chief
AMANDA STRACHAN
Deputy Criminal Chief
U.S. Attorney's Office
  for the District of Massachusetts

Date: 9-20-22

*[signature] Shelley M. Richmond Joseph*
SHELLEY M. RICHMOND JOSEPH

Date: 9-13-22

*[signature]*
THOMAS M. HOOPES, ESQ.
ELIZABETH N. MULVEY, ESQ.
DOUGLAS S. BROOKS, ESQ.

Date: 9-15-22

4

Statement of Facts

1.	Shelley Richmond Joseph ("Joseph") was appointed as a Massachusetts District Court Judge on November 2, 2017, and thereafter was assigned to sit at various district courts, including Newton District Court, in accordance with a monthly assignment schedule.

2.	Joseph was the only judge sitting at Newton District Court on April 2, 2018.

3.	Joseph knew that criminal defendants in Newton District Court custody were kept in the lockup area in the basement of the courthouse and were brought upstairs by a court officer to the courtroom for their court appearances. The normal custom and practice in Newton District Court, subject to certain exceptions, was that a defendant would be released from custody into the courtroom.   This courtroom had only one public entry/exit, which led to the courthouse lobby.

4.	The Massachusetts Rules of Court, which prescribe rules for all state district courts, including the Newton District Court, provided, in pertinent part, that "all courtroom proceedings," which includes sidebar conferences, were required to be electronically recorded.

5.	On or about November 10, 2017, the Executive Office of the Massachusetts Trial court issued guidance to all Massachusetts state judges, clerks and other courthouse personnel titled, "Policy and Procedures Regarding Interactions with the U.S. Department of Homeland Security," ("DHS Policy").  The DHS Policy instructed, in pertinent part, that (1) "Trial Court employees should be mindful that courthouses are public spaces that are open to all persons and that all persons entering a courthouse should be treated with respect and dignity, including individuals subject to civil immigration detainers and DHS employees;" (2) "DHS officials may enter a courthouse and perform their official duties;" (3) "pursuant to an immigration detainer or warrant, court officers shall permit the DHS official(s) to enter the holding cell area in order to take custody of the individual once Trial Court security personnel have finished processing that individual out of the court security personnel's custody; and (4) "[t]o the extent possible, court security personnel should require that DHS officials transport any individuals taken into custody through the prisoner transport entrance and avoid taking the individual through the public areas of the courthouse."

6.	One of the cases that Joseph heard on April 2 was Commonwealth v. A.S.  Joseph knew that A.S. was initially being held on a warrant as a fugitive from Pennsylvania and had been charged with two counts of narcotics possession in violation of Massachusetts law.   She also knew that A.S. was being held in the downstairs lockup area of the courthouse.

7.	Joseph also knew that Immigration and Customs Enforcement ("ICE"), which is part of the U.S. Department of Homeland Security, intended to take custody of A.S. pursuant to a civil immigration detainer.   The detainer stated that ICE had probable cause to believe that A.S. was a deportable alien based on a final order of removal previously issued against him.

8.	Joseph knew that an ICE officer was present in the courthouse waiting to take

5

custody of A.S. if he was released from state custody. Joseph directed a court clerk to request that the ICE officer remain outside the courtroom in accordance with the practice of the presiding justice in Newton District Court. This direction was contrary to the DHS policy, which reflects, consistent with Supreme Court precedent and constitutional guarantees, that courthouses and courtrooms are public spaces and open to the public absent extraordinary circumstances not present here.

9. When A.S.'s case was recalled that afternoon, his defense attorney asked for a sidebar. At sidebar, the prosecutor stated that she no longer believed that this defendant was the same person subject to the Pennsylvania charge and thus that she was dismissing the fugitive warrant and not seeking to detain the defendant on the remaining Massachusetts narcotics charges. The defense attorney stated that an ICE officer was waiting outside the courtroom with an immigration detainer for A.S. and would pick up A.S. if Joseph released A.S. After hearing this information, Joseph stated, among other things, "ICE is gonna get him? …. What if we detain him?" The defense attorney asked if the sidebar was being recorded and asked to go off the record. Contrary to Massachusetts Rules of Court, Joseph directed the court clerk to turn off the recording device.

10. After the recorder was turned off, there was a 52 second off-the record sidebar conference with Joseph, the defense attorney and the prosecutor present. In the course of this conference, the defense attorney asked Joseph to allow A.S., who had been escorted up to the courtroom by a court officer, to go back downstairs.

11. After the off-the record portion of the sidebar, the defense attorney asked, on the record, if he could go downstairs with A.S. and an interpreter so that they could speak. The defense attorney also stated that his client had property downstairs. Joseph stated on the record that she was granting the defense attorney's request. The clerk reminded the Judge on the record that ICE agents were present and seeking to take the defendant into custody.

12. The defense attorney and the interpreter accompanied A.S. downstairs to the lockup area. Shortly thereafter, a court officer used his key card to open the door to the sallyport and released A.S. out the back door

13. The ICE officers learned about A.S.'s release after it happened. A.S. was not taken into ICE custody on April 2, 2018.